UNITED STATES HEATER CO. *v.* IRON MOLDERS' UNION
OF NORTH AMERICA.

1. APPEAL—INJUNCTION—REFUSAL TO DISSOLVE.
   An order denying a motion to dissolve a preliminary injunction
   is not appealable.

2. VOLUNTARY ASSOCIATIONS — RIGHT TO SUE — VALIDITY OF
   STATUTE.
   Act No. 25, Pub. Acts 1897 (3 Comp. Laws, §§ 10025, 10026),
   authorizing the maintenance of suits by or against unincor-
   porated voluntary associations, clubs, or societies, is a legiti-
   mate exercise of legislative power.

3. SAME—DOUBLE REMEDY.
   The fact that the right to proceed against the individual mem-
   bers of the association is in terms preserved does not render
   the act void as affording a double remedy for the same cause
   of action.

4. SAME—CLASS LEGISLATION—LABOR ORGANIZATIONS.
   Nor is the act void as class legislation, directed against organ-
   ized labor; its scope being limited in no such manner.

5. SAME—EQUITY JURISDICTION.
   *Hence:* A bill in equity will lie, in a proper case, to enjoin an
   unincorporated labor organization from interfering with or
   intimidating complainant's employés.

Appeal from Wayne; Hosmer, J. Submitted Decem-
ber 12, 1901. Decided January 28, 1902.

Bill by the United States Heater Company against the
Iron Molders' Union of North America and others to
enjoin interference with the conduct of complainant's busi-
ness. From an order refusing to dissolve a temporary
injunction, and overruling a plea to the jurisdiction,
defendants appeal. Affirmed as to the latter part of the
order, and appeal dismissed as to the former.

*Bowen, Douglas & Whiting,* for complainant.

*James H. Pound,* for defendants.

MOORE, J.   The complainant filed a sworn bill.   The material allegations of the bill, omitting the formal parts, are as follows:

"*First.* Your orator is a corporation duly organized and existing under the laws of the State of Michigan, and having its principal office for the conduct of its business in the city of Detroit, in said county and State.   It is engaged in the manufacture of boilers for heating purposes, and has a manufacturing plant in said city of Detroit, at No. 251 Campbell avenue; and said plant represents an investment of upwards of $50,000, and requires the use of upwards of $100,000 of working capital.   In the conduct of its said business it employs about 100 persons as molders, machinists, pattern makers, core makers, apprentices, and laborers.

"*Second.* Your orator further shows that prior to the 17th day of April, 1901, it had in its employ as molders and apprentices some 25 to 30 men, among whom were the defendants Fritz Zampich, Edward Troeder, George Hoffman, Michael Schultz, Michael Murphy, Herman Karnarsky, and Henry Smithers; that, on said last-mentioned day, said last-named defendants were union men, and members of the defendant Iron Molders' Union of North America, and the two local branches herein named, and the other 16 or 17 molders then in the employ of your orator were nonunion men, or men not members of said defendant association, or either of its said branches.

"*Third.* Your orator further shows that it is advised and believes, and so charges the fact to be, that said defendant Iron Molders' Union of North America is a voluntary association, and is generally known and spoken of as a 'trade union,' and the defendants Local Branch No. 31 of the Iron Molders' Union of North America and Local Branch No. 244 of the Iron Molders' Union of North America are branches of said Iron Molders' Union of North America, which is in existence in the State of Michigan, and others of the United States.   The names of the officers of said defendant Iron Molders' Union of North America are, as your orator is advised and believes, Martin Fox, president; Joseph F. Valentine, first vice-president; M. J. Keogh, second vice-president; James E. Roach, third vice-president; and D. J. Denney, secretary. The officers of Local Union No. 244 of the Iron Molders' Union of North America are, as your orator is advised and believes, William Randall, president; Alfred Ensor,

financial secretary; and Henry Nex, recording secretary. And the officers of Local Union No. 31 of the Iron Molders' Union of North America are, as your orator is advised and believes, George Robarge, president; John M. Sims, financial secretary; and Thomas O'Neil, recording secretary.

"*Fourth.* Your orator further shows that on or about the 1st day of April, 1901, said James E. Roach, third vice-president of said defendant Iron Molders' Union of North America, called on your orator at its place of business, and wanted your orator to 'unionize' its shop, or, in other words, to induce all the molders then in its employ to become members of said defendant Iron Molders' Union of North America, and told your orator that by so doing your orator would avoid trouble; but your orator declined to accede to the request of said Roach.

"*Fifth.* Your orator further shows that afterwards, and some time prior to the 17th day of April, 1901, your orator employed as a molder one ——, a nonunion man, or a man who was not a member of said defendant associations, and said nonunion man at once entered the employ of your orator. Thereupon, and soon after his entering the employ of your orator, said defendants Fritz Zampich, Edward Troeder, George Hoffman, Michael Schultz, Michael Murphy, Herman Karnarsky, and Henry Smithers requested your orator to discharge said man because he was a nonunion man and not a member of said defendant associations, and requested your orator to unionize its shop, or, in other words, wanted your orator to agree not to employ molders who were not members of said defendant associations, or some one of them, and threatened that, unless your orator did accede to their requests, your orator would have trouble with its molders. Your orator declined to grant said requests, or to accede thereto; and subsequently, and on or about the 17th day of April, 1901, said last-named defendants, and each and every one of them, went on strike, and left the employ of your orator. Shortly afterwards, Alfred Ensor, financial secretary, and Henry Nex, recording secretary, of said Local Union No. 244 of the Iron Molders' Union of North America, called upon your orator at your orator's place of business for the purpose, as they said, of adjusting the trouble between your orator and said striking molders, or molders who had as aforesaid left the employ of your orator on said 17th day of April, 1901, and urged that the difficulties between your orator and said last-named defendants might be settled, and your

orator agree to unionize its said shop, and to agree not to employ as molders any person or persons who were not members of said defendant Iron Molders' Union of North America; but this your orator declined to do.

"*Sixth.* Your orator further shows that thereupon said defendants did unlawfully and illegally combine and conspire to force your orator to unionize its said shop, and to employ as molders no person or persons who were not members of said defendants, and, for the purpose of forcing or compelling your orator to so unionize its said shop, said defendants, with the illegal intent and unlawful purpose of compelling your orator so to do, and in furtherance of said unlawful and illegal combination and conspiracy, did for a long time, to wit, for a period of two months, daily picket the premises of your orator, and linger and loiter about, on, and in the neighborhood of the premises of your orator, and did unlawfully and illegally threaten and intimidate the molders then in the employ of your orator, and did threaten them with violence unless they left the employ of your orator and refused to work longer for your orator, and did threaten with violence and intimidate other molders who were seeking employment with your orator; and this to the detriment and loss of your orator, and contrary to its rights to the lawful use and enjoyment of its property.

"*Seventh.* Your orator further shows that for from about April 17, 1901, to June 18, 1901, and because and by reason of said unlawful acts on the part of said defendants, and because of the unlawful and illegal threats and intimidations used by said defendants, and the unlawful and illegal assaults of said defendants, or some of them, upon the molders then in the employ of your orator, it became and was necessary for your orator to convey the molders then in its employ to and from their homes, and to and from the premises of your orator, in covered vans or wagons, and at various intervals during said last-mentioned period of time it became and was necessary for your orator to seek the assistance and aid of the police of said city of Detroit for the purpose of protecting the molders in its employ from the unlawful and illegal threats and intimidations and assaults of said defendants, or of some of them.

"*Eighth.* Your orator further shows that from about the 18th day of June, 1901, until the 20th of July, 1901, there was comparative peace and quiet about the premises of your orator, and your orator and the molders in its

employ were free from the threats and intimidations and assaults of the nature hereinbefore set forth; that at about 6:30 o'clock in the morning of the 20th day of July, 1901, said defendants and members of said defendant Iron Molders' Union of North America, Local Union No. 31 of the Iron Molders' Union of North America, and Local Union No. 244 of the Iron Molders' Union of North America, as your orator is advised and believes, and so charges the fact to be, to the number of from 150 to 200, and in two separate bodies of 75 to 100, did approach the premises of your orator, and did station themselves in the path of the molders then in the employ of your orator, and who were then on their way to commence their day's work in the shops of your orator, and did then and there, and in pursuance of said illegal combination and conspiracy to force your orator to unionize its shop, or to employ no molders who were not members of said defendant associations, or of some one of them, throw bricks and stones at the ·molders then in the employ of your orator, and did threaten them with violence, and did threaten to beat, kill, smash, and otherwise injure the molders then in the employ of your orator, should they (the said molders) continue to work for your orator, and did threaten to 'get at them' in their homes if they should continue to work for your orator and continue in its employ, and thereby did unlawfully and illegally force and compel the molders then in the employ of your orator to cease and refrain to work for it and to leave its employ, and to break the contracts then and theretofore existing between them and your orator.

"*Ninth.* And your orator further shows that about 25 of the molders in its employ on said 20th day of July, 1901, were, as your orator is advised and believes, and so charges the fact to be, forced and compelled by said threats and intimidations, and through fear of violence at the hands of said defendants and the members of said unions, to refuse to work longer for your orator, and to break the contracts then existing between them and your orator; and thus, as your orator is advised and believes, it was illegally and unlawfully deprived by said defendants of its just rights in the premises.

"*Tenth.* And your orator further shows that it is advised and believes, and so charges the fact to be, that by reason of said threats and intimidations, and by reason of fear of violence that said defendants and the members of said unions may do any person or persons seeking employ-

ment as molders with your orator, your orator will be unable to obtain molders, and will be thereby unlawfully and illegally damaged by the said actions of said defendants and the members of said unions.

"*Eleventh*. And your orator further shows that many of the molders who were so prevented from returning to the employ of your orator are desirous of working for and continuing in the employ of your orator, and your orator is desirous of having them work for and again enter its employ; but your orator shows that they will not enter its employ and continue to work for it unless said defendants and the members of said unions are enjoined or restrained from threatening them with violence, or otherwise unlawfully and illegally interfering with them, should they enter or attempt to enter the employ of your orator, or work or attempt to work for your orator; and your orator shows that it is advised and believes that this is an unlawful and illegal interference with, and contrary to, the just rights of your orator.

"*Twelfth*. And your orator further shows that because of said unlawful and illegal combination and conspiracy and said illegal acts on the part of these defendants and the members of said unions, and all of which, your orator shows, have been done in pursuance of said unlawful and illegal combination and conspiracy to oblige or force your orator to unionize its shop, or to employ no molders who were not members of said defendant unions, your orator has suffered great financial loss, of upwards of $100, but the exact amount of which it is difficult for your orator to estimate, and further shows that if said defendants are permitted to continue such acts, or acts of a similar nature, great and irreparable injury and damage will be done to the business of your orator.    *    *    *

" Wherefore your orator prays:

"(*a*) That the Iron Molders' Union of North America, and its officers and members, Local Union No. 31 of the Iron Molders' Union of North America, and its officers and members, Local Union No. 244 of the Iron Molders' Union of North America, and its officers and members, Fritz Zampich, Edward Troeder, George Hoffman, Michael Schultz, Michael Murphy, Herman Karnarsky, and Henry Smithers, may answer this bill, but not under oath; answer under oath being hereby expressly waived.

"(*b*) That the combination or conspiracy of said defendants, or any or either of them, for the purpose of compelling, by threat, intimidation, or force, your orator

to accede to the demands of said defendants, and to harass and intimidate the employés of your orator, and to interfere with the free employment and free services of employés of your orator, and to impede, obstruct, interfere with, or destroy the regular operation and conduct of the business of your orator, and to deprive your orator of free use of its property, may be decreed to be in violation of the rights of your orator, and against the law of the land, and that the said defendants, and each of them, may be perpetually restrained from doing any act or thing in furtherance of said combination for such purposes."

And then came a prayer for a writ of injunction.

A preliminary writ of injunction was issued against all the defendants; the language used in the injunction following that used in the case of *Beck* v. *Protective Union*, 118 Mich. 497 (77 N. W. 13, 42 L. R. A. 407, 74 Am. St. Rep. 421). A reference to that case will make it unnecessary to set out more of the injunction here.

Certain of the defendants interposed a plea, the essential parts of which are as follows:

" The plea of the Iron Molders' Union of North America, an unincorporated society, and its officers and members, Local Union No. 31 of the Iron Molders' Union of North America, and its officers and members, Local Union No. 244 of the Iron Molders' Union of North America, and its officers and members, a part of the above-named defendants, to the bill of complaint of the United States Heater Company, a Michigan corporation:

" These defendants, and each of them, specially appear in this court, and file this their joint and several plea to the bill of complaint filed in this cause, and  *   *   *   say that they, nor either of them, are a legal body capable of suing or being sued by the laws of the State of Michigan, nor of any other State or country in this world, and therefore not capable of being subjected to this suit by law in any but their individual members' names. The complainant having averred that these pleading defendants are but a voluntary association of citizens throughout the United States and the Dominion of Canada, and therefore not subject to suit, therefore these so-called defendants, who have no legal form, shape, or substance, and who are not, as voluntary, unincorporated societies, subject to be sued as

a single individual, do plead their said want of legal capacity in bar to complainant's bill of complaint."

The other defendants interposed an answer, in which they admitted some of the paragraphs of the bill. They neither admitted nor denied other paragraphs. They denied the truth of paragraphs 7, 8, 11, 12, and 13. A motion was then made on the part of Mr. Hoffman, one of the defendants, for a dissolution of the preliminary injunction. Before the motion for a dissolution of the injunction was heard, it was stipulated—

"That this motion shall extend to, and be agreed to be upon the behalf of, all the defendants, and to be based upon all the pleadings and affidavits on file to this date in this cause, and that the case may be now heard so far as the plea is concerned; whereupon, on hearing said counsel, it is ordered that said motion be denied in all its parts, and the plea filed in this cause be overruled, with permission hereby given the pleading defendants to answer the bill of complaint filed in this case within 30 days, if they so desire."

From this order the case is brought here by appeal.

It will be observed from the statement of the proceedings that no replication has been filed, no proofs taken, and no hearing had upon the merits. The first question which confronts us is whether the order is a final decree, from which an appeal will lie. So far. as that part of the order is concerned which overrules the motion to dissolve the injunction, we have no hesitancy in saying it is not a final decree, and is not appealable. The question is not a new one in this State. It was raised as early as *Wing* v. *Warner*, 2 Doug. 288. In that case there is a very full and able discussion of the question involved, and it is unnecessary to repeat what was so ably written in that opinion. We shall content ourselves with a brief quotation:

"Orders granting, modifying, continuing, or dissolving such injunctions are interlocutory orders. Upon the final hearing the chancellor may dissolve such an injunction, or make it perpetual, or otherwise by the decree dispose of the subject of it as the equity of the case, as then pre-

sented, may require; and until then there is no decree which, under the statute, can be appealed from."

This early ruling of the court has never been changed. See, also, 2 High, Inj. (3d Ed.) § 1693; 2 Cycl. Law & Proc. 587.

We now come to the question, Was the court right in overruling the plea? Section 1 of Act No. 25 of the Public Acts of 1897 reads as follows:

"SECTION 1. *The People of the State of Michigan enact,* That whenever any unincorporated voluntary association, club, or society shall be formed in this State, composed of five members or more, having some distinguishing name, actions at law or in chancery may be brought by or against such association, club, or society by the name by which it is known: *Provided,* that this act shall not take away the right of the litigant to proceed against all the members of such association, club, or society, if such litigant shall so elect to proceed."

This provision of the statute would seem to answer the question in the affirmative. Counsel says the legislature had no right to pass such a law. His position stated in the brief is:

"Now, this raises the question, flatly put, of the ability of the lawmaking power to authorize suits to be maintained against nothing. Second, if it may, has the law been complied with in this case? And, first, am I not correct in assuming that there must be a person or thing about which a suit is to be maintained? Would a law authorizing suits to be maintained against the air, the sun, moon, or stars, be effective? This law does not give these associations, clubs, or societies any legal standing, nor make them persons or legal entities. They cannot bring suit in the club, association, or society name. When they sue they must sue as a copartnership, under well-recognized legal rules. The person who seeks to deal with them can, by the provisions of this act, still hold them as copartners, and therefore would seem to have two remedies, while the club, society, or association has only one. The only object of this law is to hold by injunctions men who may or may not be citizens of this State. It is very clever in the use to which it is put. In other words, no matter what the

original object of the act, it can only be effectively used against what is known as 'organized labor.'"

We do not see the same difficulties in the law or its provisions which are seen by counsel. The law deals with conditions as they exist. It recognized that there may be unincorporated voluntary associations, clubs, and societies in this State which do or may do things which make it desirable for them to have the right to bring actions at law or in chancery, and also that it may be necessary or desirable to make them defendants in an action at law or proceeding in chancery. If the allegations contained in the bill of complaint in this case are true, the wisdom of such legislation is made apparent.

There is nothing in the provisions of the law which indicates it is aimed at organized labor. There is hardly a town, village, or city, or a college or university, in this State, which has not its voluntary associations, clubs, or societies, to which the provisions of the law would apply.

It is for the legislature to determine who may sue and be sued, so long as it does not interfere with vested rights or deny any remedy.

"As a general rule, every State has complete control over the remedies which it offers to suitors in its courts. It may abolish one class of courts, and create another. It may give a new and additional remedy for a right or equity already in existence. And it may abolish old remedies and substitute new. * * * And any rule or regulation in regard to the remedy which does not, under pretense of modifying or regulating it, take away or impair the right itself, cannot be regarded as beyond the proper province of legislation." Cooley, Const. Lim. (6th Ed.) 442.

The appeal is dismissed as to that part of the order refusing to dissolve the injunction. As to that part of the order overruling the plea, the action of the court below is affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.