## A LABOR CONTRACT ENFORCED BY A LABOR UNION.

### Common Pleas Court of Cuyahoga County.

HERMAN LEVERANZ, Member of Local Union No. 52, International Brotherhood of Firemen and Oilers, v. THE CLEVELAND HOME BREWING COMPANY, ET AL.

### Decided June 29, 1922.

*Injunction Lies to Restrain Discontinuance of a Labor Contract—Not Terminated by Employers in Accordance With Its Provisions—Right of One to Sue for All—Enjoining Employers from Disregarding Provisions of a Contract is not Enforcement of Specific Performance of a Contract for Personal Services.*

1. Where a contract between a group of employers and a labor union is entered into in good faith and in the belief that it will prove of mutual advantage, it is the duty of a court of equity to enjoin any conspiracy on either side to breach it.

2. Both sides to the present controversy having failed to give the required notice of a desire to discontinue the existing contract at the date of its termination, the court holds that the ineffective conferences, looking toward a renewal of the contract with modifications, in nowise affected the old contract, which remains in force through failure to take the prescribed step for its termination.

3. In view of this automatic continuance of the old contract at a fixed wage, the plea of the employers, that considering present conditions of trade the wage is too high, is without merit; and an injunction which requires that the same wage and conditions of work shall be continued to the present employees of the defendants, who are members of the union, may properly be granted.

4. A contract fixing the wage scale of such members of a local union as are employed by the employers who are parties thereto, presents such community of interest, privity, and right of recovery by reason of the same essential facts as to bring the case within the authority of Section 11257, permitting one or more to sue or defend for all.

*Reed, Meals, Orgill & Maschke,* and *Louis W. Wickham,* for plaintiff.

*Holding, Masten, Duncan & Leckie,* for defendants.

HAY, J.

This action is based upon an agreement between the defendant brewing companies and Local Union No. 52 of the International Brotherhood of Firemen and Oilers, made and entered into January 31st, 1921, a copy of which is attached to the amended petition.

Said contract contained a provision that it should remain in force until February 1, 1922, and should continue for another year thereafter, unless notice in writing to the contrary should be given either party thereto at least 30 days prior to the first day of February, 1922, and specifications of proposed changes be submitted at least 15 days prior to February 1, 1922.

Plaintiff alleges, in substance, that no notice was given by either party to terminate this contract, and that it is still in full force; that regardless of such fact, the defendant companies have conspired together to reduce the wages of the members of said local union employed by said brewing companies respectively; that said companies have refused longer to pay the scale of wages provided in said contract, that they have fixed a lower scale, and when they pay their employees they require them to sign a receipt accepting such reduced amount in full payment of the amounts respectively due them.

Plaintiff prays, in substance, that said defendants and each of them may be enjoined from violating said contract, or any of its terms and conditions.

The plaintiff brought this action on behalf of himself and the other members of said Local Union. Each of the eight defendants filed a separate answer. The answers are practically the same.

Each admits the agreement of January 31, 1921, but alleges, as a defense, that on December 31, 1921, defendant received from said Local Union No. 52, a written form of contract containing terms and conditions for the employment of members of said union for the period beginning February 1, 1922, and ending February 1, 1923; that said form of contract was accompanied by letter dated December 30, 1921, which letter requested a conference concerning said new contract to be held at a con-

venient time; that shortly after the receipt of said letter and contract, it arranged for such conference; that said conference was held January 12, 1922; that at said conference the terms of said new contract were discussed by plaintiff and the officers of said local union and the persons representing said defendants; that no agreement was reached at said first conference, and another was aranged and held prior to January 30, 1922; that another meeting was arranged for and held February 7, 1922; that at said meeting of January 12th, representatives of the defendants informed plaintiff and the representatives of said local union, that it would not pay the wages specified to be paid to firemen and oilers as set forth in said proposed form of contract submitted on December 30, 1921, and told them the amount of wages it would be willing to pay said members of Local Union No. 52 who were in the employ of the defendants from February 1, 1922, to February 1, 1923.

That by reason of the facts aforesaid, said Local Union No. 52 and all of its members waived any written notice from said defendants or defendants' representatives as stipulated in Article 6 of said contract of January 31, 1921, and was estopped from asserting that the provisions of said Article 6 were not complied with by defendants, and that said contract is still in force.

As a second defense each of the defendants, except the brewing company of which said Herman Leveranz, plaintiff, is an employee, allege that plaintiff is not entitled to have or maintain this action for the reason that he is not and was not at any time mentioned in the amended petition an employee of such defendant, and has no beneficial interest in any wages paid by such defendant.

To each of these separate answers the plaintiff filed a reply in which he denies that on December 31, 1921, or at any other time, said defendant received from Local Union No. 52 a written form of contract containing terms and conditions for the employment of the members of said union for the period beginning February 1, 1922, and ending February 1, 1923; denies that said local union ever sent to said defendant, or authorized to be

sent to' said defendant, any letter requesting a conference concerning said new contract; denies that any conference was held on January 12, 1922, or at any time prior to January 30, 1922; denies that plaintiff and Local Union No. 52 and all members thereof, or either or any of them waived the written notice stipulated in Article 6 of said contract of January 31, 1921; and denies that plaintiff and members of said union are estopped from asserting that the provisions of said Article 6 of said con tract were not complied with by defendant, and that said contract is still in force.

The first important question that confronts the court is— Has plaintiff a right to bring this action-

Counsel for plaintiff contend that plaintiff has a right to bring this action by authority of Section 11257 of the General Code, which reads as folows: "When the question is one of a common or general interest of many persons, or the parties are very numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

On the other hand, counsel for the defendant raise many objections to the right of plaintiff to bring and maintain this action, some of which are serious.

They contend that plaintiff has not brought himself within the rule laid down by our Supreme Court in *Hoskins* v. *Alcott*, 13 O. S., 216, that where a statute, upon certain conditions, confers a right or gives a remedy, unknown to the common law, the party asserting the right, or availing himself of the remedy, must in his pleadings, bring himself, or his case, clearly within the statute.

Counsel also cite the case of *Stevens* v. *Times Star*, 72 O. S.. 154, in which the court hold:

"The rule is uniform that, in order to maintain a suit by one for the benefit of himself and others there must be a community of interests as well as a right of recovery by reason of the same essential facts."

Counsel for defendant contend that under this contract fixing

the wages of such members of the local union as might be hired by the defendant companies during the period of this contract, there can be no joint right of action, that each man employed must be relegated to a separate action for the amount of wages due him from his separate employer; that the wages of each laborer are paid to him individually for his own use, and that his co-laborers could, by no stretch of the imagination, be held to have any interest in the amount due him.

Defendants counsel also contend that there is no privity of contract between the parties, that individuals who have no community of interest can not prosecute their several rights in one case; that the court has no jurisdiction in equity in this case, that the several parties interested have an adequate remedy at law, and that this is an attempt to enforce specific performance of a contract by injunction.

On the other hand, plaintiff contends that he has full authority to maintain this action, and cites a number of cases in support thereof, some of which perhaps are not applicable to the facts in this case. Among the authorities so cited, are:

Bates Pleading and Practice, p. 70.; *Statler Co.* v. *Employees' Alliance, et al* 19 N.P.(N.S.), 375; *Hillenbrand* v. *Trades Council*, 14 O. D., 628; *Kealey* v. *Faulkner*, 7 N.P.(N.S.), 49; *Platt* v. *Colvin* 50 O. S., 703; Story's Equity Pleading, Section 97; *Walker et al* v. *Village of Dillonvaie*, 11 C.C.(N.S.), 385; Pomeroy's Equity Jurisprudence, Section 260; *Kinney* v. *Pocock*, 8 N.P.(N.S.), 121; *Dailey* v. *City of New York*, 170 App. Div., 267; *Erie Railroad Co.* v. *City of Buffalo*, 180 N. Y., 192; *Green Island Ice Co.* v. *Norton*, 105 N. Y. App. Div., 351; *Walla Walla* v. *Walla Walla Water Co.*, 172 U. S., 1; *Hitchman Coal and Coke Company* v. *Mitchell*, 245 U. S 229; *Folsom* v. *Lewis*, 208 Mass., 338; *Reynolds* v. *Davis*, 198 Mass., 294; *U. S. Heater Co.* v. *Moulders Union*, 129 Mich., 354; *Jersey City Printing Co.* v. *Cassidy*, 63 N. J. Eq., 759.

We can not attempt to review these authorities in detail. In most of the cases the position of the parties is reversed. The employer seeking relief against the action of employees or for interference with its business or for some breach of contractual

rights. In these cases courts of equity have been obliged to go a long ways in attempting to protect the rights of the employer, largely for the reason that there was no adequate remedy at law.

Conceding that each of the employees in the instant case has a legal remedy by suit against his individual employer, or by bringing many suits during the period of this contract, is such remedy adequate or of any value to such employee? We think not under the facts shown herein? Is there such a community of interest among the members of Local Union No. 52 as would justify a court in finding this action maintainable? This question involves a discussion as to whether or not such a contract as it is admitted was entered into by these parties, was of any value. It is self-evident that both of the parties to this contract in question deemed such a contract of great importance to them. It was important for the union of firemen and oilers to have its members employed by the brewing companies of Cleveland, to the extent that the companies needed such labor, and at wages and for hours they considered satisfactory. It was also important for these eight brewing companies in a city where unionism is as strong as it is in the city of Cleveland, to enjoy, during the period of such contract, industrial peace and to have a place where they could always go for competent men to meet their demands in this particular line of work.

We believe it was a contract entered into in the best of faith by both parties, with a feeling that it was to their mutual interest and advantage to make such a contract, and with the full intention at the time of faithfully carrying out the conditions of the contract. The matter of collective bargaining was recognized on both sides. The 300 members of this union were represented by their chosen officers or agents, and the eight breweries were represented by a committee selected by them. As long as such a contract continues in force, it ought to be the duty of a court of equity to enjoin any conspiracy on the part of either side to breach it, and the aid of the courts ought to be extended as freely to the employees as to the employers.

It is contended by defendants that only the 40 men who are employed by these several breweries have any interest in this contract in question. We do not think this position is logical. While but 39 or 40 men are now employed, a much larger number may be employed during the life of the contract, and any changes in the personel of those employed would come, of course, from the other members of this local union. Those employed are not immune from sickness or death, or perhaps from securing more desirable employment elsewhere. In the event of changes, other members of this union would be selected, but which ones no one can tell. It is possible, but hardly probable, that the entire membership might be called upon during the year. It would therefore seem as though the entire membership would have a beneficial interest in this contract, a substantial interest in having it enforced according to its terms. It secures to the members of this union the benefit, during the term of the contract, of the certainty of such employment in their line as the companies have to give and under terms satisfactory to them.

If a court of equity can not enjoin an attempted breach of such a contract, then the system of collective bargaining may as well be abandoned, and such advantages as come to both the employer and employee by reason of such system, will be lost, as the legal remedy is wholly inadequate. The expense of obtaining it would render it valueless.

The second question that is presented is one that has given the court fully as much trouble as the first. Are the plaintiffs estopped from claiming that this contract is terminated by reason of the conferences which they attended in February, and possibly in January, 1922,

It is conceded that neither Local Union No. 52, nor the brewing companies gave the notice in writing required by the contract for its termination. The International Union of Steam and Operating Engineers did write the letter of December 30th which we have mentioned, and in the new scale of wages submitted included one for firemen and oilers. There is no evidence, however, showing that this was done by any authority of

Local Union No. 52, or either or any of its officers or agents. The evidence shows that after this letter which was written December 30th, and which was probably received on December 31st, the brewers through their agent, Mr. Moore, notified both of these unions to participate in a conference and some representative or representatives of the firemen and oilers union attended. Such representatives stated emphatically at that time that they could accept no lower wage, but offered to, and did make a survey of the plants of the defendants to see if fewer workmen might not be employed. This survey showed that the brewers themselves had reduced the number to the minimum, and at the one or two later conferences no agreement as to a reduction could be made. Counsel for defendants contend that by accepting the invitation of the brewers to attend these conferences and in attending them, the Firemen and Oilers Union acquiesced in the notice which was given by the Engineer's Union. In argument it was intimated that as these two unions had adjoining offices in the same building, it is hardly probable that the engineers sent this letter of December 30 with accompanying schedules, without the knowledge and consent of Local Union No. 52. If such be the case, it is quite likely that the letter would have been a joint letter, and there would have been no reason why the firemen and oilers' business agent should not have signed it. It does not appear that they were in any way dissatisfied with their contract, and they gave no notice for its termination. Up to December 31st, at the time this letter was received, the brewing companies had given no notice that they wished this contract terminated, although such notice must have been given not later than January 1st or 2d. It hardly seems probable that if the brewers had intended to give such notice that they would have waited until the last moment to do so under the terms of the contract. It also seems that if they then had such desire, that as long as the firemen and oilers unions had not joined in the notice that the brewers, if they wished to make any new contract for the coming year, the brewers themselves would have given such written notice. It is undoubtedly true that if

the representatives  of the firemen and oiler's union had been guilty of any conduct which mislead the brewing companies in the matter of giving this notice, that the members of this local union would be estopped from seeking to take advantage of the fact that the brewers had given no notice for the termination of the contract. But under the circumstances as they are admitted to exist, can the brewers reasonably claim that they were misled?

Up to January 2, 1922, admittedly the last day on which the brewers could have given such notice, what had the representatives of the firemen and oilers union done to deceive or mislead the brewing companies? Up to that time they had given no written notice for the termination of the contract, they had had no correspondence or interviews in reference to the matter with any representative of the brewing companies, nor had they attended any conferences or been invited to attend any. Before they attended any conference or had been invited to attend any, the time had passed for the giving of this written notice. We do not think the mere fact that the representative of the engineers union had included in the schedule attached to his letter, a form of contract including the firemen and oilers, would justify the brewers in not giving a written notice on their part, unless they had some reasonable ground to believe that the engineers union had acted under some authority from Local Union No. 52. We hardly think a mere inference that such was the case would be sufficient, or, in other words, would excuse them from giving the written notice required by the contract.

Neither do we think that the mere fact that the business representative of Local Union No. 52 attended the two or three conferences I have mentioned, in response to the invitation of the brewers, would be sufficient to estop the members of this union from claiming the benefits of this contract, or that by accepting such invitation given by the brewers after the time to give the written notice for the termination of the contract had expired, would waive the giving of such notice on the part of the brewers. We have given this matter very careful attention, as this question was strongly urged by counsel for defendant, who also made

the additional plea that there is at present great depression in this particular line of business, that wages under this contract are more that 100 per cent higher than pre-war time wages, and that the necessities of the business demanded that the employees should be willing to share reasonably in a reduction in the conduct of these establishments. This argument has considerable force, if the question of the amount of the wage entered into the question before the court. We do not consider it does. There is either a contract for a specific wage, or no contract. If the contract which these parties made is in force, it is immaterial whether the wage is too high or two low under present conditions. The parties themselves agreed upon it when the contract was made, and the contract was to run for two years, unless terminated after one year in the manner provided by the contract. We therefore, do not consider that the question of whether the wage is too high or too low is before the court.

There is one other question presented,—that of conspiracy. It is claimed by defendants that they had perfect right to act in concert, and that in so doing there could be no conspiracy. We believe that such contracts as these should be looked upon with favor by courts, as they tend toward harmony and such relations between employers and employees as result in industrial peace and the prosperity that usually attends such relations. In collective bargaining the parties naturally act through their chosen representatives; but after a contract has been solemnly made by the representatives of the two parties, and some time before its termination one side or the other, through its representatives, by concerted action try to breach the contract and to evade the performance of the conditions on their part to be done and performed, then it comes as near being a conspiracy to defeat the rights of the other parties to the contract as anything can be. Such action on the part of the brewing companies to evade the payment to their employees of the wage they had agreed upon, would clearly be a combination of such persons to injure their employees and deprive them of their contractual rights. While it was perfectly lawful for them to get together and determine

how much wages they could afford to pay at the time the contract was made, it was an entirely different matter for them to get together and determine how much wages they could afford to pay at some time during the life of the contract, and then, by concerted action, attempt to force the other parties to the contract to accept such reduced amount in lieu of the contract price.

If this contract be in force, and we believe and hold that it is, the defendants have enjoyed the benefits of it for an entire year, and. as they still continué these men in their employ, they undoubtedly. desire to have the fruits of the contract for the present year. We do not believe that it can be rightfully said that such contract is without mutuality, and that a breach of it may not be enjoined by procedings in equity. The courts of the land have often held that an injunction will issue on the application of an employer of labor to prevent a combination of members or officers of a union from carrying into execution an agreement to procure his employees to quit his service in breach of their contracts of employment, where the remedy at law would be inadequate.

In the case of *Hitchman Coal & ·Coke Company* v. *Mitchell,* 245 U. S., 229, the court say:

·"Plaintiff having, in the exercise of its undoubted right, established a working agreement between it and its employees with the free assent of the latter, is entitled to be protected in the enjoyment of the resulting status as in any other legal right."

· ¨Four of the cases I have already cited tend to sustain the right of the employer to injunctive relief against interference with contractual rights between the employers and the employees: *Folsom* v. *Lewis,* 208 Mass., 338; *Reynolds* v. *Davis,* 198 Mass., ·294; *U. S. Heater Co.* v. *Moulders' Union,* 129 Mich., 354; *Jersey City Printing Co.* v. *Cassidy,* 63 N. J:, Eq., 759.

In this case the shoe is on the other foot, and the employees are seeking to prohibit a breach of contractual rights on the part of the employers.

In. the .recent case of ·*Currier & Sons* v. *International Mould-*

*ers' Union of North America,* 115 Atlantic Rep., 66, the Chancery Court of New Jersey says in substance, that when labor appeals to the court in such cases, the door will not be closed to it.

In the case of *Mechanics Foundry & Machine Co.* v. *Lynch et al,* composing International Moulders' Union, 236 Mass., 504, 12 A. L. R., 1057, the action was brought to restrain the defendants from continuing the strike, and the court granted the relief prayed for. The first syllabus reads as follows:

"1.    The employees in a factory can not conspire and combine to quit work and enforce a strike because the employer refuses to continue to employ fellow workmen."

The third syllabus reads as follows:

"3.    Injunction lies to restrain a strike for an unlawful purpose."

Counsel for plaintiff cite the decision of Judge Wagner of the Supreme Court of New York county in the case of *Schlesinger* v. *Quinto,* recently decided. In this case labor applied for the relief and asked that defendants be enjoined from combining and conspiring to order, direct, instigate, counsel, advise or encourage members of the defendant association to violate a certain agreement made between the association and plaintiff's union, and from doing any act in furtherance of such conspiracy. The court in its opinion, says:

"While this application is novel, it is novel only in the respect that for the first time an employee's organization is seeking to restrain their employer's organization from violating a contractual obligation.

It is elementary and yet sometimes requires emphasis that the door of a court of equity is open to employer and employee alike.    It is no respecter of persons, it is keen to protect the legal rights of all.    Heretofore the employer alone has prayed the protection of a court of equity against threatened irreparable illegal acts of the employee.

But mutuality of obligation compels a mutuality of remedy. The fact that the employees have entered equity's threshhold by

a hitherto untraveled path does not lessen their rights to the law's decree.

Precedent is not our only guide in deciding these disputes, for many are worn out by time and made useless by the more enlightened and humane conception of social justice. That progressive sentiment of advanced civilization which has compelled legislative action to correct and improve conditions which a proper regard for humanity would no longer tolerate, can not be ignored by the courts. Our decisions should be in harmony with that modern conception and not in defiance of it.''

The court further says in its opinion, that:

''It can not be seriously contended that the plaintiffs have an adequate remedy at law. That the damages resulting from the alleged violation of the agreement would be irremediable at law is too patent for discussion. There are over 40,000 workers whose rights are involved and over 300 members of defendant organization. The contract expires within six months and a trial of the issues can hardly be had within that time. It is unthinkable that the court would force the litigants into a court of law. A court of equity looks to the substance and essence of things and disregards matters of form and technical niceties.''

Counsel for defendant also contend that this is in reality an action to enforce a specific performance of a contract for personal services.

In the case of *Toledo Railroad Co.* v. *Pennsylvania Company, et al*, 54 Fed., 730, in which a mandatory injunction was issued during the great railroad strike of twenty years ago, enjoining railroad companies and the employees from refusing to receive freight, Judge Taft said that the injunction did not amount to an enforced specific performance of personal service by the employees, but that it was an order restraining them if they assumed to do the work, from doing it in a way which would violate complainant's rights.

In this case we do not think that the injunction prayed for seeks to compel the brewing companies to continue the members of Local Union No. 52 in its employ, but it does seek to compel them while these men are in their employ and the companies

enjoy the benefits of their, labor, to refrain from violating the terms of the contract, the fruits of which they are enjoying.

The case of *Nederlandsch, etc.* v. *Stevedores, etc.*, 265 Fed., 397, is an interesting case in connection with the instant one. Counsel for defendants contend that there is no precedent for such relief in a court of equity as is asked for in this case. It is probably true that labor, in its desperation, has often taken the law into its own hands and has seldom appealed to the courts of the land. This is unfortunate and regrettable. It is a hopeful sign when they do appeal to the courts, and while they should be given no undue advantage by reason of so doing, yet the courts should go just as far in protecting their rights in particular cases as they do in maintaining the rights of the employers.

The recent decision of the United States Supreme Court, in the Coronado coal case, speaking through Chief Justice Taft, has established the right of these unincorporated labor associations to sue and be sued. This recent decision evidences the tendency of the courts of the land to take cognizance of the various cases in which labor and capital may be involved. The instant case is such a case, and if, as it is claimed, there be no precedent for the relief asked by plaintiffs in this case, we think one ought to be established without further delay.

A finding and decree may be entered for plaintiffs as prayed for.